No. 22−16897

_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

_____

ARNOLD ABRERA

*Plaintiff-Appellants*,

v.

GAVIN NEWSOM, ET AL

*Defendants-Appellees*.

On Appeal from the United States District Court
for the Easter District of California
D.C. No.: 2:22-cv-01162-JAM-DB
Hon. John A. Mendez

_____

## APPELLANT'S OPENING BRIEF

_____

Gary W. Gorski (SBN 166526)
***VETERANS LAW CENTER***
3017 Douglas Blvd. Suite 150
Roseville, CA 95661
(406) 266-1000 / (775) 720-1000 (cell)
CivilRightsAttorney@BlackWolfLaw.com
www.veteranslawcenter.com

Daniel M. Karalash (SBN 176422)
***STRATEGIC LAW COMMAND***
3017 Douglas Blvd. Suite 150
Roseville, CA 95661
(916) 787-1234 / (916) 223-9884 (cell)
dan@stratlaw.org / www.stratlaw.org
***Attorneys for Appellants***

## <u>TABLE OF CONTENTS</u>

<u>TABLE OF AUTHORITIES</u> ..................................................................... iii

<u>INTRODUCTION</u> ............................................................................. 1

<u>JURISDICTIONAL STATEMENT</u> ............................................. 4

<u>STATUTORY AUTHORITY AT ISSUE</u> ................................... 4

<u>ISSUES PRESENTED</u> ...................................................................... 6

    *<u>Primary Issue:</u>* ..................................................................... 6

    *<u>Secondary Issues:</u>* ............................................................. 7

<u>STATEMENT OF THE CASE</u> ...................................................... 8

<u>SUMMARY OF THE ARGUMENT</u> ........................................... 15

<u>STANDARD OF REVIEW</u> ............................................................ 17

<u>ARGUMENT</u> ...................................................................................... 18

    I.    **PLAINTIFF HAS ARTICLE III STANDING** ........................ 20

    **A. § 1021.11 Caused An Injury-In-Fact To Plaintiff
       When His Attorney Refused To Proceed Because Of
       The Risk Of Financial Exposure**………………………………20

    **B. The Mere Enactment, Without Enforcement Or Repeal,
       Of § 1021.11 Has A Chilling Effect On
       The Attorney-Client Relationship And Access
       To The Courts, Regardless As To Whether
       Any Party States That They Will Not Enforce The
       Statute**………………………………………………………,……………22

    **C. The Motion for Preliminary Relief Need Not Be Brought
       Against City And County Defendants For Relief**

i

**As The Attorney General Is The Only Party That Can Defend A State Law, And A Declaration Of Unconstitutionality Would Result In The Law Of The Case**…………………………………………………………28

**D. This Action Is Not Moot And There Still Exist A Live Case And Controversy**………………………….……..…..33

**E. Plaintiff Is Still Entitled To Relief, Even Though There Is A Parallel Proceeding Involving The Same Law With Similar Relief Granted**…………………………………....…..…43

**<u>CONCLUSION</u>**.………………………………………………… 49

**<u>STATEMENT OF RELATED CASES</u>**……………………...…………50

**<u>CERTIFICATE OF COMPLIANCE FOR BRIEFS</u>**………………51

**<u>CERTIFICATE OF SERVICE</u>**…………………………………..…….52

## **CASES**

*Akina v. Hawaii*, 835 F.3d 1003 (9th Cir. 2016) .......................................... 48

*Allen v. Wright*, 468 U.S. 737 (1984) .......................................................... 20

*Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289 (1979) .......... 34

*Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166 (9th Cir. 2002) ...... 17, 34

*Bland v. Fessler*, 88 F.3d 729 (9th Cir. 1996) ........................................... 41, 42

*Caetano v. Massachusetts*, 577 U.S. 411 (2016) (per curiam) ......... *in passim*

*California v. HHS*, 390 F. Supp. 3d 1061 (N.D. Cal. 2019) ...................... 46, 47

*California v. Trump*, 963 F.3d 926 (9th Cir. 2020) ................................... 17

*California v. U.S. Dep't of Health & Human Servs.*,
941 F.3d 410 (9th Cir. 2019) ...................................................................... 17

*Cantrell v. City of Long Beach*, 241 F.3d 674 (9th Cir. 2001) ................... 34

*Catanzano v. Wing,* 277 F.3d 99 (2d Cir. 2001) ......................................... 34

*Cf. N.C. Right to Life, Inc. v. Bartlett*, 168 F.3d 705 (4th Cir. 1999) ......... 23

*Cf. R.I. Ass'n of Realtors v. Whitehouse*, 199 F.3d 26 (1st Cir. 1999) ........ 23

*Chafin v. Chafin*, 568 U.S. 165 (2013) ...................................................... 33, 34

*Chicago United Indus., Ltd. v. City of Chicago*,
445 F.3d 940 (7th Cir. 2006) ...................................................................... 38

*City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283 (1982) ................ 47

*City of Reno v. Netflix, Inc.*, 52 F.4th 874, 876 (9th Cir. 2022) ................. 35

*Cleaver v. Wilcox*, 499 F.2d 940 (9th Cir. 1974) ........................................ 48

*Close v. Sotheby's, Inc.*, 909 F.3d 1204 (9th Cir. 2018) ............................. 40

*Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 404 (1821) ........................... 45

*Colo. River Water Conservation Dist. v. United States*,
424 U.S. 800 (1976) ...................................................................... 35, 47

*Cooper v. Newsom*, 26 F.4th 1104, 1105 (9th Cir. 2022) ........................... 30

*District of Columbia v. Heller*, 554 U.S. 570 (2008) ...................... *in passim*

*Dombrowski v. Pfister,* 380 U.S. 479 (1965) ................................................ 28

*Donovan* v. *City of Dallas,* 377 U.S. 408 (1964) ........................................ 47

*Duncan v. Bonta*, 19 F.4th 1087 (9th Cir. 2021) ........................................ 18

*Ellis v. City of La Mesa,* 990 F.2d 1518, 1523 (9th Cir. 1993) .................. 17

*Elrod v. Burns*, 427 U.S. 347 (1976) .......................................................... 38

*Ferreira v. United States*, 354 F. Supp. 2d 406 (S.D.N.Y. 2005) .............. 34

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
528 U.S. 167 (2000) ...................................................................... 38, 47

*Harris v. Pernsley*, 820 F.2d 592 (3d Cir. 1987) ........................................ 30

*Hollingsworth v. Perry*, 570 U.S. 693 (2013) ........................................ 31, 32

*Jones v. Bonta*, 34 F.4th 704 (9th Cir. 2022) .............................................. 26

*Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298 (2012) ........... 47, 48

*Kravitz v. United States Dep't of Commerce*,
366 F. Supp. 3d 681 (D. Md. 2019) ............................................... 45

*Kucharek v. Hanaway*, 902 F.2d 513 (7th Cir. 1990) ................................. 23

*Landis* v. *North American Co.,* 299 U.S. 248 (1936) ................................ 47

*Long Beach Area Peace Network v. City of Long Beach,*
574 F.3d 1011 (9th Cir. 2009) ...................................................... 20

*Lower Elwha Band of S'Klallams v. Lummi Indian Tribe,*
235 F.3d 443 (9th Cir. 2000) ...................................................... 32

*McDonald v. City of Chicago,* 561 U.S. 742 (2010) ....................... *in passim*

*Mission Product Holdings, Inc.* v. *Tempnology, LLC,*
139 S. Ct. 1652 (2019) ............................................................. 35

*Mobil Oil Corp. v. Attorney Gen. of Va.,* 940 F.2d 73 (4th Cir. 1991) ....... 41

*N.Y. State Rifle & Pistol Ass'n v. Bruen,* 142 S. Ct. 2111 (2022) ..... *in passim*

*Nat'l Aeronautics & Space Admin. v. Nelson,* 562 U.S. 134 (2011) .......... 37

*Nelson v. Nat'l Aeronautics & Space Admin.,*
530 F.3d 865 (9th Cir. 2008) ...................................................... 37

*Nev. Land Action Ass'n v. United States Forest Serv.,*
8 F.3d 713, 715 (9th Cir. 1993) .................................................. 17

*New State Ice Co. v. Liebmann,* 285 U.S. 262 (1932) ................................ 18

*New York v. United States Dep't of Commerce,*
351 F. Supp. 3d 502 (S.D.N.Y. 2019) ......................................... 45

*Northeastern Fla. Chapter, Ass.Gen. Cont. of Am.* v. *Jacksonville,*
508 U. S. 656 (1993) ................................................................. 35

*People ex rel. Deukmejian v. Brown,* 29 Cal. 3d 150 (1981) .................... 30

*People v. Bradley,* 1 Cal. 3d 80 (Cal. 1969) (en banc) ............................. 41

*People v. Perez,* 279 Cal. Rptr. 915 (Cal. Ct. App. 1991) ......................... 41

*Perry v. Brown*, 671 F.3d 1052 (9th Cir. 2012),
*rev'd*, 133 S. Ct. 2652, 186 L. Ed. 2d 768 (2013) ...................................... 30, 31

*Perry v. Schwarzenegger*, 704 F. Supp. 2d 921 (N.D. Cal. 2010) ............. 31

*Polo Fashions, Inc. v. Dick Bruhn, Inc.*, 793 F.2d 1132 (9th Cir. 1986) .... 18

*Pool v. City of Houston*, 978 F.3d 307 (5th Cir. 2020) ............................... 43

*Saldano v. Roach*, 363 F.3d 545 (5th Cir. 2004) ......................................... 30

*Silvester v. Becerra*, No. 17-342, 2018 WL 943032 (U.S. Feb. 20, 2018) .. 20

*Spear* v. *Reeves*, 148 Cal. 501 (1906) ......................................................... 30

*State v. Ross*, 358 F. Supp. 3d 965 (N.D. Cal. 2019) ................................... 45

*Steelman* v. *All Continent Corp.,* 301 U.S. 278 (1937) .............................. 47

*Steffel v. Thompson*, 415 U.S. 452 (1974) ................................................... 49

*United States v. Fisher-Otis Co*., 496 F.2d 1146 (10th Cir. 1974) ............. 48

*United States v. Kelly*, 874 F.3d 1037, 1046 (9th Cir. 2017) ...................... 17

*United States v. Lummi Nation*, 763 F.3d 1180 (9th Cir. 2014) ................. 32

*United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.) (en banc)
cert. denied, 469 U.S. 824 (1984) ................................................................. 18

*United States v. Miller*, 307 U.S. 174 (1939) ................................... *in passim*

*United States v. Verdugo-Urquidez*, 494 U.S. 259 (1990) .......................... 19

*United Steel Workers of Am. v. Retirement Income Plan for Hourly-Rated
Employees of ASARCO, Inc.*, 512 F.3d 555 (9th Cir. 2008) ........................ 32

*Vt. Right to Life Comm. v. Sorrell*, 221 F.3d 376 (2d Cir. 2000) .............. 23, 24

vi

*Yniguez v. State of Arizona,* 939 F.2d 727 (9th Cir. 1991) ......................... 42

## **STATUTES**

28 U.S.C. § 1291 ................................................................ 4

28 U.S.C. § 1331 ................................................................ 4

28 U.S.C. § 1342 ................................................................ 4

28 U.S.C. § 2106 ............................................................ 7, 48

28 U.S.C. § 2106 ............................................................... 48

28 U.S.C. § 2201 .......................................................... 16, 48

28 U.S.C. § 2202 ............................................................ 7, 16

42 U.S.C. § 1983 ................................................................ 4

42 U.S.C. § 1988 ............................................................... 21

Cal. Bar. R. Prof. Conduct, Rule 1.7 ............................... 26

Cal. Civ. Code § 1021.11 ................................... *in passim*

Cal. Code Civ. Proc., § 902.1 ......................................... 29

Cal. Gov. Code, § 12511 ................................................. 29

Cal. Gov. Code, § 12512 ................................................. 29

Cal. SB 1327 (C.C.P. § 1021.11) .................... *in passim*

## **CONSTITUTION**

First Amendment ............................................. *in passim*

Second Amendment ......................................... *in passim*

Fourteenth Amendment ................................................................ *in passim*

Cal. Const., art. V, § 1.................................................................. 29

Cal. Const., art. V, § 13................................................................ 29

## SECONDARY SOURCES

Charles Alan Wright, Arthur R. Miller & Edward H. Cooper,
13A *Federal Practice & Procedure* § 3533 (2d ed. 1984) ........................ 20, 34

Jonathan F. Mitchell, *The Writ-of-Erasure Fallacy*,
104 VA. L. REV. 933, 953 (2018) ............................................................. 40

Robert A. Schapiro, "The Legislative Injunction: A Remedy for Unconstitutional
Legislative Inaction"
*The Yale Law Journal* 99, no. 1, p. 231 (1989) ........................................... 39

# **INTRODUCTION**

This case comes before this Court as an appeal from a final order denying Plaintiff's motion for a preliminary injunction and declaratory relief. (ER-3, Order of Docket No. 29, filed December 9, 2022.)

There are seven total government defendants named in the operative pleading found at ER-40.[1] Of the seven, only two are parties to this appeal. For ease of reference, these parties are grouped into two distinct categories:

The first group are the State of California defendants: GAVIN NEWSOM, in his official capacity as Governor of the State of California; ROB BONTA, in his official capacity as Attorney General of the State of California. (hereinafter "State" or "the State")

The second group are the municipal and county defendants: ANNE MARIE SCHUBERT, in her official capacity as County of Sacramento District Attorney; COUNTY OF SACRAMENTO; BOBBY DAVIS, in his official capacity as Chief of the Elk Grove Police Department; JONATHAN P. HOBBS, in his official capacity as the City Attorney for the City of Elk Grove; CITY OF ELK GROVE. (hereinafter "Municipal Defendants")

---

[1] First Amended and <u>Supplemental</u> Complaint For Temporary Restraining Order, Preliminary Injunction, Declaratory and Injunctive Relief, and Monetary Damages (42 U.S.C. § 1983) (hereinafter "FAC").

1

On July 5, 2022, the underlying action was commenced for the return of Plaintiff's firearms which were illegally seized by municipal defendants in violation of the Second Amendment, and the Supreme Court's holdings in *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022); *District of Columbia v. Heller*, 554 U.S. 570 (2008); *McDonald v. City of Chicago*, 561 U.S. 742 (2010), *Caetano v. Massachusetts*, 577 U.S. 411 (2016) (per curiam); and, *United States v. Miller*, 307 U.S. 174 (1939).

After this action was commenced, defendants Newsom and Bonta rushed through the legislature SB 1327 (C.C.P. § 1021.11), that was signed into law by Defendant Newsom on July 22, 2022. § 1021.11 is a one-sided fee shifting statute in favor of the government in order to suppress litigation involving the Second Amendment.

Thereafter, as part of a meet and confer with all named defendants, a stipulation was reached whereas Plaintiff would file a First Amended Complaint. (ER-162, ECF # 14) Plaintiff added two new causes of actions challenging the constitutionality of SB 1327, hereinafter § 1021.11, and that after further meet and confer, a stay was issued while subject Motion for a Preliminary Injunction was litigated with the only Defendants Bonta and Newsome. (ER-162, ECF # 16; ER-40, FAC).

2

The relief sought was both a declaration for this case and to enjoin the State from enforcing SB 1327 (C.C.P. § 1021.11) fee-shifting regime which only targets litigation involving the Second Amendment, and to further enjoin them from any future conduct, as follows:

> Plaintiff seeks to <u>declare</u> C.C.P. § 1021.11 unconstitutional, and <u>enjoin</u> enforcement of such law <u>as-applied</u>, and further <u>as-written</u>.
>
> FURTHERMORE, Plaintiff requests an order enjoining Defendants from passing and/or enforcing any new laws and <u>future iterations</u> of the currently challenged law, especially actions designed to thwart this Court's jurisdiction and Plaintiff's standing. [emphasis added]
>
> (ER-154, lines 16-21, Notice of Motion.)

Because § 1021.11's fee-shifting penalty is unconstitutional, Plaintiff sought <u>declaratory and injunctive</u> relief to invalidate Section 1021.11 and enjoin its application against Plaintiff <u>in this case</u>, as well as his criminal and civil case pending in state court for the return of his arms. (ER-22, Abrera Decl. ¶s 17-22; ER-48, FAC ¶ 38, ER-54, FAC ¶s 83, 87-90, 92-96.) Therefore, declaratory relief in this case can be used in the state court cases pertaining to the same municipal defendants named in the underlying action. (ER-153, lines 24-25, Notice of Motion.)

The relief Plaintiff sought was not only to enjoin enforcement of the statute against Plaintiff, but also for a declaration that the statute was unconstitutional

under the First Amendment, Second Amendment, and the Fourteenth

Amendment's Privileges or Immunities clause.

The District Court denied the request for preliminary equitable relief,

leaving intact § 1021.11 and the ability of municipal defendants to seek attorney

fees and costs against Plaintiff, Mr. Karalash and Mr. Gorski personally. (ER-42,

Gorski Decl. ¶s 42-43.)

## JURISDICTIONAL STATEMENT

Subject matter jurisdiction in the District Court was based on 28 U.S.C. §§

1331 & 1342. These sections provide for jurisdiction to hear all actions authorized

by 42 U.S.C. § 1983. Pursuant to 28 U.S.C. § 1291, this Court has jurisdiction over

this appeal from a final order denying preliminary injunctive and declaratory relief,

filed on December 9, 2022. (ER-3.) Notice of Appeal was timely filed on

December 9, 2022. (ER-156.)

## STATUTORY AUTHORITY AT ISSUE

§ 1021.11. Attorney's fees in actions seeking to prevent
enforcement of laws that regulate or restrict firearms [Effective
January 1, 2023]

**(a)** Notwithstanding any other law, any person, including an
entity, attorney, or law firm, who seeks declaratory or
injunctive relief to prevent this state, a political subdivision, a
governmental entity or public official in this state, or a person
in this state from enforcing any statute, ordinance, rule,
regulation, or any other type of law that regulates or restricts
firearms, or that represents any litigant seeking that relief, is

4

jointly and severally liable to pay the attorney's fees and costs of the prevailing party.

**(b)** For purposes of this section, a party is considered a prevailing party if a court does either of the following:

**(1)** Dismisses any claim or cause of action brought by the party seeking the declaratory or injunctive relief described by subdivision (a), regardless of the reason for the dismissal.

**(2)** Enters judgment in favor of the party opposing the declaratory or injunctive relief described by subdivision (a), on any claim or cause of action.

**(c)** Regardless of whether a prevailing party sought to recover attorney's fees or costs in the underlying action, a prevailing party under this section <u>may bring a civil action</u> to recover attorney's fees and costs against a person, including an entity, attorney, or law firm, that sought declaratory or injunctive relief described by subdivision (a) not later than the third anniversary of the date on which, as applicable:

**(1)** The dismissal or judgment described by subdivision (b) becomes final upon the conclusion of appellate review.

**(2)** The time for seeking appellate review expires.

**(d)** None of the following <u>are a defense</u> to an action brought under subdivision (c):

**(1)** A prevailing party under this section failed to seek recovery of attorney's fees or costs in the underlying action.

**(2)** The court in the underlying action declined to recognize or enforce the requirements of this section.

**(3)** The court in the underlying action held that any provision of this section is invalid, unconstitutional, or preempted by federal law, notwithstanding the doctrines of issue or claim preclusion.

**(e)** Any person, including an entity, attorney, or law firm, who seeks declaratory or injunctive relief as described in subdivision

5

(a), <u>shall not be deemed a prevailing party</u> under this section or any other provision of this chapter.

## **ISSUES PRESENTED**

**_Primary Issue_**_:_ As to the Order Denying Plaintiff's Motion for Preliminary Injunction (ER-3), the main issue to be decided is whether Plaintiff has suffered an injury-in-fact from the passage of § 1021.11, and continues to suffer whereby Plaintiff can be granted relief. The answer to that issue is "yes." Mr. Karalash advised his client, Plaintiff Abrera, that he would no longer be able to represent him due to the liability exposure § 1021.11 creates, and that it was a direct conflict of interest because he was unwilling to accept the risk due to his personal exposure. (ER-23, Abrera Decl. ¶s 20-24 and ER-26, ¶ 41 ("I already suffered injury-in-fact because Mr. Karalash will withdrawal his representation before January 1, 2023, if defendants are not enjoined."); ER-34, Gorski Decl. ¶s 16-23, 27, 29, 39, 42; ER-112-113, FAC ¶s 460-481.) <u>The District Court did not consider this very important fact as the Order is devoid of mentioning it.</u>

Whether Plaintiff continues to suffer an injury-in-fact because his attorney, Mr. Karalash, refuses to represent Plaintiff and has filed a motion to withdraw his representation due the civil exposure caused by § 1021.11, and further similar acts also capable of escaping review.

Whether this Court should review de novo, Plaintiff's motion for interlocutory and declaratory relief, and grant the relief requested in the underlying action as stated in the Notice of Motion found at ER-151-155.

Whether Plaintiff has standing to challenge § 1021.11.

Whether declaratory relief could redress Plaintiff' injury.

Whether an injunction could redress Plaintiff' injury.

Whether, pursuant to 28 U.S.C. § 2106, this Court should vacate, set aside and/or reverse the District Court's order and remand the cause and direct the entry of an order finding standing, and granting Plaintiff's request for a preliminary and permanent injunction, and for a declaration that the statute violates the First, Second, and Fourteenth Amendments.

Whether Plaintiff is entitled to relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

***Secondary Issues****:* In a separate case challenging § 1021.11, two decisions were rendered whereby the Southern District of California found the plaintiffs in that case had standing, even though the Attorney General made the same offer of non-enforcement in that case. See court order on Standing, *Miller v. Bonta*, No. 22cv1446-BEN (JLB), 2022 U.S. Dist. LEXIS 217190 (S.D. Cal. Dec. 1, 2022), and injunction granted in *Miller v. Bonta*, No. 22cv1446-BEN (JLB), 2022 U.S. Dist. LEXIS 228197 (S.D. Cal. Dec. 19, 2022).

7

The effect of simultaneous prosecution of two actions with different plaintiffs but some of the same defendants (i.e. Bonta and Newsom) (a.k.a. "parallel proceedings", "the exercise of concurrent jurisdiction", etc.) in which at least some of the issues and parties are closely related.

## STATEMENT OF THE CASE

Plaintiff Abrera, a 48-year-old, has never been arrested nor charged with a crime in his life. Plaintiff was charged with the possession of two modern semi-automatic rifles (i.e., AR-15s) which were siezed.[2] He also had his semi-automatic handguns seized. (ER-18, Abrera Decl. ¶ 1; FAC ¶s 1, 2, 12-15, 56-77, 82-94.)[3]

Without any evidence of a physical altercation, injuries, or aggressive behavior on the part of Plaintiff or his wife, Plaintiff's wife was detained under 5150 because she stated she wanted to kill herself while in an emotional state regarding a marital issue. At the same time, the police seized two semi-automatic handguns owned by Plaintiff's wife. However, the seizure did not stop there; Plaintiff's firearms (two semi-automatic rifles and two semi-automatic pistols) were also seized; even though he committed no crime, was not under the influence

_____

[2] Modern rifles are legal to build, buy, and own under federal law and the laws of 45 states. Modern rifles are popular.

[3] The First Amended Complaint ("FAC") is attached to the Declaration of Gary W. Gorski as Exhibit "1", starting at ER-40)

of alcohol or drugs, was docile and compliant, and made no threat to himself or others. Plaintiff remained at home, deprived of his firearms, while his wife was detained for observation over a three-day period. (ER-40, FAC ¶s 1, 2, 12-15, 56-77, 82-94.)

Instead of returning Plaintiff's firearms as he was not a person detained or arrested under state law; Defendants instituted a criminal proceeding against Plaintiff for possession of so-called "assault weapons" which were legally purchased in California. (ER-15, FAC ¶s 87-92.) In addition, unbeknownst to Plaintiff, on January 25, 2021, a Petition for Judicial Determination Re: Return of Firearms Welfare & Institutions Code section 8102 was filed by defendant Jonathan P. Hobbs as the City of Elk Grove Attorney, captioned *City of Elk Grove vs. Euginie Abrera*, Sacramento Superior Court case number 34-2021-20000745, attached as Exhibit "3" [ER-128] to the First Amended Complaint. (ER-54, FAC ¶ 83.) Plaintiff was never named as a party to the City's Cal. Welf. & Inst. Code § 8102 petition, though four of the firearms were purchased, owned and possessed by Plaintiff. (ER-54, FAC ¶ 85, 105.)

Also, unbeknownst to Plaintiff, on March 18, 2021, a Felony Complaint was filed by defendant Anne Marie Schubert, in her official capacity as County of Sacramento District Attorney, charging Plaintiff for possession of two rifles which

9

did not have so-called "bullet-buttons" and because of cosmetic features completely unrelated to the actual functioning of the rifle. (ER-54, FAC ¶ 87.)

Because of the felony complaint and seizure of firearms legally purchased and owned, Plaintiff retained the legal services of attorney Daniel Karalash to both defend Plaintiff in the criminal action and to get his firearms returned to him. (ER-23, Abrera Decl. ¶s 22-24; ER-113, FAC ¶ 462)

Prior to the *Bruen* decision, Mr. Karalash was retained to represent Plaintiff in *People vs. Arnold Abrera*, Sacramento Superior Court case number 21FE004857 challenging the constitutionality of the Assault Weapon Control Act in a motion to dismiss. Along with having the felony case dismissed on a motion, Mr. Karalash filed a separate motion for return of property after the criminal case was dismissed. The second motion separate motion also challenged the state's gun laws under the Second Amendment, and for the Court to find the laws unconstitutional. This is a civil proceeding in nature, and the Court was requested to exercise its inherent equitable powers---a case whereby the defendant District Attorney in this case can now use § 1021.11 against Mr. Karalash and Plaintiff retroactively since there is a three-year statute of limitations to bring an action. (ER-12, Karalash Decl. ¶s 2-3; ER-54, FAC ¶s 87-86))

It was also discovered that a separate civil action was filed regarding Plaintiff's firearms in the case of *City of Elk Grove vs. Euginie Abrera*, Sacramento Superior Court case number 34-2021-20000745. (ER-54, FAC ¶s 87-88)

On April 13, 2021, Plaintiff's attorney, Mr. Karalash filed a motion to dismiss the Felony Complaint as legally baseless, and the Court granted Plaintiff's motion. (ER-23, Abrera Decl. ¶s 23-24; ER-55, FAC ¶s 92-95.) The government refused to return all of Plaintiff's firearms, even after the court dismissed the case.

Even though legally purchased, the arms seized cannot be replaced because they are all now banned in California --- including the handguns as they can no longer be sold in California since they are not on an approved roster. (ER-56, FAC ¶s 97-98, 330-370.)

On June 23, 2022, the United States Supreme Court issued its decision in *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022).

In response to the Supreme Court's decision, Bonta stated at ER-32, Gorski Decl. ¶ 9, the following:

> The SCOTUS decision is a setback for safety. I am grateful that we had a plan in place to protect our current and future legislative gun control efforts. In the wake of the Texas tragedy and the continued threats of mass shootings, it's a moral imperative that California leads on this issue.

Defendant Newsom is perfectly clear on his "policy" regarding the Second Amendment: "We are sick and tired of being on the defense in this movement. It's

11

time to put them on the defense," [emphasis added] This was stated by Gov. Newsom at a press conference at the signing of AB 1327. (ER-15, Karalash Decl. ¶ 18; ER-20, Abrera Decl. ¶ 7; ER-30, Gorski Decl. ¶ 7.)  He specifically targets the Second Amendment as though it is not part of the Bill of Rights. This is the "policy" to be enjoined as well.

Plaintiff commenced this action in the District Court on July 5, 2022, for the return of his arms. (ER-161, ECF No. 1.)

After this action was commenced, defendants Newsom and Bonta rushed Senate Bill No. 1327 through the legislature. This bill was a multifaceted gun control bill which allowed private citizens to enforce California's gun control laws with a one-sided attorney fee shifting provision (C.C.P. § 1021.11) in favor of anyone who defended California gun control laws. Per the Legislative Counsel Digest, "[t]his bill would create a private right of action for any person against any person …", with a one-sided attorney fee provision. SB 1327 was signed into law by Newsom on July 22, 2022.

SB 1327 was defendants plan to "Put them on the defense", which really means to intentionally interfere with, obstruct and nullify Plaintiff's right to keep and bear arms, with collateral damage to the First and Fourteenth Amendments. Defendants have singled out Plaintiff's rights under the Second Amendment, and injunctive and declaratory relief is necessary to stop the harassment of the People

12

who exercise their Second Amendment rights. (ER-15, Karalash Decl. ¶ 19-22; ER-20, Abrera Decl. ¶ 8-10; ER-30-Gorski Decl. ¶ 8-10.) AB 1327 is a direct result of the political gamesmanship being played by defendants Newsom and Bonta regarding the Second Amendment. (ER-41, FAC ¶s 2-10)

Because Defendants have targeted Plaintiff's Second Amendment rights and caused injury-in-fact as to his attorney-client representation in this case, as well as state court proceedings, Plaintiff filed a First Amended and Supplemental Complaint for Temporary Restraining Order, Preliminary Injunction, Declaratory and Injunctive Relief, And Monetary Damages (42 U.S.C. § 1983) [hereinafter "FAC"] (ER-40.), adding two additional Cause of Actions (ER-112, 116.) ("This is a pre-enforcement challenge to Senate Bill No. 1327 which is the addition of section 1021.11 to the California Code of Civil Procedure, which becomes effective and enforceable on January 1, 2023, is *per se* a restriction on the access to this court.") (ER-112, FAC ¶ 456.)

The FAC presents claims against defendants Newsom and Bonta for violations of the United States Constitution, specifically violations of the First, Second and Fourteenth Amendments relating to Newsom's policy and the law targeting the Second Amendment, and the statutory scheme regulating attorney-client relationships in Second Amendment cases.

The motion for the injunction and declaratory relief was not just premised on § 1021.11's broad "chilling effect" it has in general, but on the very specific harm to Plaintiff's relationship with his lead attorney, Mr. Karalash. (ER-112, FAC ¶ 460, ECF No. 16, also found at Docket Entry 19-3, Exhibit "1"; Reply to Opposition, 13:12-16, ECF No. 24; ER-23-24, Abrera Decl. ¶s 20-24, 41 ECF No. 20; Karalash Decl. ¶s 12, 15, 22, ECF No. 24-1; Reply to Request for Judicial Notice, 2:15-20, ECF No. 27.)

This injury-in-fact was presented to the District Court, and that Mr. Karalash was going to withdraw his representation unless § 1021.11 was declared unconstitutional and repealed *in toto*, thus stopping <u>all the named defendants</u> in this action from collection actions per § 1021.11. (ER-112, FAC ¶ 460, ECF No. 16, also found at Docket Entry 19-3, Exhibit "1"; Reply to Opposition, 13:12-16, ECF No. 24; ER-23-24, Abrera Decl. ¶s 20-24, 41 ECF No. 20; ER-12, Karalash Decl. ¶s 4-12, 15, 22, ECF No. 24-1; Reply to Request for Judicial Notice, 2:15-20, ECF No. 27.)

Mr. Karalash advised his client, Plaintiff Abrera, that he would no longer be able to represent him due to the liability exposure § 1021.11 creates, and that it was a direct conflict of interest because he was unwilling to accept the risk. (ER-23, Abrera Decl. ¶s 20-24 and ER-26, ¶ 41 ["I already suffered injury-in-fact because Mr. Karalash will withdraw his representation before January 1, 2023, if

14

defendants are not enjoined."]; ER-34, Gorski Decl. ¶s 16-23, 27, 29, 39, 42; ER-112-113, FAC ¶s 460-481)

Mr. Karalash has now formally filed his motion to be relieved as counsel because of legal exposure presented by § 1021.11 as to non-state defendants in this case specifically. (ER-164, ECF No. 36, MOTION to WITHDRAW as ATTORNEY Daniel M. Karalash by Arnold Abrera. Motion Hearing set for 1/24/2023 at 01:30 PM in Courtroom 6 (JAM) before Senior Judge John A. Mendez.")

## **SUMMARY OF THE ARGUMENT**

Plaintiff has standing since he has suffered an injury-in-fact with his attorney-client relationship with his attorney, Mr. Dan Karalash. § 1021.11 had a real chilling effect on his relationship because Mr. Karalash is unwilling to assume any risk on the payment of attorney fees to the government, especially since other defendants in this case have made no representation that they would not exercise the rights under § 1021.11.

In addition, the presence of § 1021.11 on the books has already had a chilling effect on litigation strategies, such as in the criminal case.

Because Plaintiff has standing, and this Court's review is *de novo*, Plaintiff is requesting this Court to grant the relief motioned for in the District Court.

Plaintiff is renewing his request for both declaratory and injunctive relief in this case pursuant to the Notice of Motion filed in the District Court at ER-151, which challenges the § 1021.11 on First, Second and Fourteenth Amendment grounds, and the Privileges or Immunities Clause of the Fourteenth Amendment. "Plaintiff is entitled to declaratory and equitable relief … including prospective injunctive relief." (ER-118, FAC ¶ 497) Plaintiff's claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202.

A secondary issue presented in this case is the fact that the District Court for the Southern District of California ruled on a similar request for injunctive relief in the matter of *Miller v. Bonta*, No. 22cv1446-BEN (JLB)(S.D. Cal. Dec. 1, 2022). In that case, the Southern District found that the plaintiffs there had standing due to the "chilling effect" § 1021.11 had a litigation strategy; compared to Mr. Abrera, who actually suffered injury to his attorney-client relationship with Mr. Karalsh.

Plaintiff is entitled to declaratory relief on the issue, regardless of another court's ruling.

Furthermore, this same tactic was used in the *Miller v. Bonta* case, but yet, the Southern District Court found that there was still an injury-in-fact. Therefore, this becomes a question of law to resolve as the district courts are split.

Regardless as to Defendants statement of non-enforcement, and another court's decision, this case is ripe, not moot, as Plaintiff continues to suffer an

16

injury-in-fact because the statute remains on the books and enforceable by municipal and county defendants in this proceeding in light of the District Court's ruling.

Plaintiff's request for relief goes further than just a finding that § 1021.11 is unenforceable against Plaintiff and his attorneys; Plaintiff is also seeking to enjoin Newsom from passing any further fee shifting legislation whereby the Second Amendment is singled out for enforcement, as no other provision of the Bill of Rights is in the same class. In other words, the Second Amendment cannot be targeted for specific legislation whereby attorneys and parties are held personally liable for the State's litigation costs.

## **STANDARD OF REVIEW**

"We review the issue of standing de novo. *Ellis v. City of La Mesa,* 990 F.2d 1518, 1523 (9th Cir. 1993)." *Nev. Land Action Ass'n v. United States Forest Serv.,* 8 F.3d 713, 715 (9th Cir. 1993). "We review the existence of Article III standing *de novo.* See *California v. U.S. Dep't of Health & Human Servs.*, 941 F.3d 410, 420 (9th Cir. 2019). We review questions of statutory interpretation *de novo. See United States v. Kelly*, 874 F.3d 1037, 1046 (9th Cir. 2017)." *California v. Trump*, 963 F.3d 926, 935 (9th Cir. 2020). "We review mootness, a question of law, de novo." *Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166, 1173 (9th Cir. 2002).

17

"The legal standards it applied, however, are subject to de novo review. E.g., *United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.) (en banc), cert. denied, 469 U.S. 824, 105 S. Ct. 101, 83 L. Ed. 2d 46 (1984)." *Polo Fashions, Inc. v. Dick Bruhn, Inc.*, 793 F.2d 1132, 1135 (9th Cir. 1986).

The District Court denied Plaintiff's motion for declaratory and injunctive relief on the basis of "standing." (ER-7, line 12 ["The Court finds that Plaintiff has failed to establish standing."]) Therefore, this appeal is reviewed *de novo*, and order the relief requested at ER-151-155.

## **ARGUMENT**

When Justice Brandeis observed that states are the laboratories of democracy, he didn't mean that states can experiment with the People's rights. See *New State Ice Co. v. Liebmann*, 285 U.S. 262, 311, 52 S. Ct. 371, 76 L. Ed. 747 (1932) (Brandeis, J., dissenting). But that's what California does here.

*Duncan v. Bonta*, 19 F.4th 1087, 1140 (9th Cir. 2021).

On June 23, 2022, the United States Supreme Court's issued an opinion in the case of *New York State Rifle & Pistol Assn., Inc. v. Bruen*, 597 U. S. ___, 142 S. Ct. 2111, 213 L. Ed. 2d 387 (2022). The Supreme Court made clear that the Second Amendment to the United States Constitution is not to be singled out for attack by States, like California.

The constitutional right to bear arms in public for self-defense is not "a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees." *McDonald*,

18

561 U. S., at 780, 130 S. Ct. 3020, 177 L. Ed. 2d 894 (plurality opinion). We know of no other constitutional right that an individual may exercise only after demonstrating to government officers some special need. That is not how the First Amendment works when it comes to unpopular speech or the free exercise of religion. It is not how the Sixth Amendment works when it comes to a defendant's right to confront the witnesses against him. And it is not how the Second Amendment works when it comes to public carry for self-defense.

N.Y. State Rifle & Pistol Ass'n v. Bruen, 142 S. Ct. 2111, 2156 (2022)

The "Second Amendment right is exercised individually and belongs to all Americans." *District of Columbia v. Heller*, 554 U.S. 570, 581 (2008). The "people" protected by the Second Amendment "refers to a class of persons who are part of a national community." *Id.* (quoting *United States v. Verdugo-Urquidez*, 494 U.S. 259, 265 (1990)).

The State is of the belief that when "the People" become a California citizen or just a person passing through; they forfeit their Second Amendment right at the state line as though "the People" are no longer part of a "a national community" or have a "connection to this country." Prior decisions of this Circuit, which conflict with *District of Columbia v. Heller*, 554 U.S. 570 (2008), *McDonald v. City of Chicago*, 561 U.S. 742 (2010), *Caetano v. Massachusetts*, 577 U.S. 411 (2016) (per curiam), *United States v. Miller*, 307 U.S. 174 (1939) and most recently *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, 2156 (2022), have only

19

emboldened Defendants in their quest to nullify the Second Amendment – what California has forgotten is the fact the Bill of Rights is to prevent majority rule (a.k.a. "mob rule").

California is also very mindful to treat the Second Amendment differently from other individual constitutional rights. To California, the Second Amendment is "a second-class right," *McDonald*, 561 U.S. at 780, and a "constitutional orphan," *Silvester v. Becerra*, No. 17-342, 2018 WL 943032, at 8 (U.S. Feb. 20, 2018) (Thomas, J., dissenting from denial of certiorari).

## I.    PLAINTIFF HAS ARTICLE III STANDING

"Standing, in the constitutional sense, requires that plaintiffs establish (1) a 'distinct and palpable' injury in fact (2) that is 'fairly traceable' to the challenged provision and (3) that would 'likely . . . be redressed' by a favorable decision for the plaintiff." *Long Beach Area Peace Network v. City of Long Beach*, 574 F.3d 1011 (9th Cir. 2009) (quoting *Allen v. Wright*, 468 U.S. 737, 750-51, 104 S. Ct. 3315, 82 L. Ed. 2d 556 (1984)).

### A. § 1021.11 Caused An Injury-In-Fact To Plaintiff When His Attorney Refused To Proceed Because Of The Risk Of Financial Exposure.

Here, the District Court missed the primary injury-in-fact: that Plaintiff was going to be deprived of his attorney of choice which is easily traceable to the enactment of § 1021.11. And secondarily, the impact the law has on his attorneys'

judgment due to personal risk of financial ruin. (ER-23, Abrera Decl. ¶s 20-24 and ER-26, ¶ 41 ["I already suffered injury-in-fact because Mr. Karalash will withdraw his representation before January 1, 2023, if defendants are not enjoined."]; ER-34, Gorski Decl. ¶s 16-23, 27, 29, 39, 42; ER-112-113, FAC ¶s 460-481)

The District Court's order only identifies Plaintiff's general averments of fact, and not the loss of attorney Karalash and the imbedded conflict of interest the creates by simply being on the books, to wit:

> Plaintiff claims that, regardless of Defendants' stated commitment, he and other potential litigants have suffered an injury-in-fact due to the chilling effect of the statute, which deters legal challenges. Id. at 7-9. Plaintiff further contends that an injury-in-fact has been established because the statute nullifies 42 U.S.C. § 1988, a federal statutory right. Id. at 10.

(ER-7, Order, lines 5-11.)

The Order omits and ignores the most important fact which is that Mr. Karalash was withdrawing his representation of Plaintiff because of § 1021.11, and that it was a direct conflict of interest because he was unwilling to accept the risk. If Mr. Karalash were stay in the case, his decision making would involve self-preservation which would not be in the best interest of his client. (ER-23, Abrera Decl. ¶s 20-24 and ER-26, ¶ 41 ("I already suffered injury-in-fact because Mr. Karalash will withdrawal his representation before January 1, 2023, if defendants

are not enjoined."); ER-34, Gorski Decl. ¶s 16-23, 27, 29, 39, 42; ER-112-113, FAC ¶s 460-481)

### B. The Mere Enactment, Without Enforcement Or Repeal, Of § 1021.11 Has A Chilling Effect On The Attorney-Client Relationship And Access To The Courts, Regardless As To Whether Any Party States That They Will Not Enforce The Statute.

"Defendants have stated in their opposition brief that they do not intend to enforce the statute against Plaintiff in the current action or any related action." (ER-8, Order lines 11-13) That is no comfort to Mr. Karalash, Plaintiff or Mr. Gorski, especially since there is a 3-year statute of limitations to bring an action for attorney fees by any of the other parties to this lawsuit (i.e. county and municipal defendants). Besides, the Attorney General's position was one of conditional offer of non-enforcement if the two causes of actions (Eleventh and Twelfth Claim for Relief, ER-112, ER-116) challenging § 1021.11 were dismissed at the outset. This position kept changing as the hearing date on the motion got closer. (ER-22, Abrera Decl. ¶ 17-18; ER-34, Gorski Decl. ¶s 16-23, 27, 29, 39, 42; ER-112-113, FAC ¶s 460-481) At no time did any other defendant in this action indicate that they would not enforce § 1021.11 against Plaintiff and his attorneys. (ER-22, Abrera Decl. ¶ 17-18; ER-15, Gorski Decl. ¶ 15)

At the outset, § 1021.11 provides a private right of action for attorney fees along with a three-year statute of limitations, whereas normally attorneys are made

by motion before the same judge who issued judgment. Though this Attorney General (Bonta) may be bound by a promise of non-enforcement, it does not bind defendants County of Sacramento, District Attorney, City of Elk Grove, and the City Attorney, nor would it bind any successor in interest.

Besides, times change and so do elected officials. See *Vt. Right to Life Comm. v. Sorrell*, 221 F.3d 376, 383 (2d Cir. 2000) ("[T]he State's representation cannot remove VRLC's reasonable fear that it will be subjected to penalties for its planned expressive activities. If we held otherwise, we would be placing VRLC's asserted First Amendment rights 'at the sufferance of' Vermont's Attorney General."); *Cf. R.I. Ass'n of Realtors v. Whitehouse*, 199 F.3d 26, 34 n.4 (1st Cir. 1999) ("In finding a credible threat of prosecution, the district court relied in part on the possibility that the new attorney general might not have agreed with the litigation position taken by his predecessor. This was error, Attorney General Whitehouse says, because the court should have presumed continuity between administrations. We need not become embroiled in this dispute, for Attorney General Pine's representations, even if binding on his successors, do not suffice to render the controversy moot."); *Kucharek v. Hanaway*, 902 F.2d 513, 519 (7th Cir. 1990) ("But the Attorney General . . . may change his mind about the meaning of the statute; and he may be replaced in office.").

23

Here, the Defendant Attorney General could leave office and his successor might begin immediate enforcement. And the Defendant Attorney General's announcement of non-enforcement does not prevent other government attorneys such as county counsel or city attorneys from seeking their attorney's fees and costs against Second Amendment plaintiffs. *Cf. N.C. Right to Life, Inc. v. Bartlett*, 168 F.3d 705, 711 (4th Cir. 1999) ("Nor does the record indicate that the local district attorneys have any intention of refraining from prosecuting those who appear to violate the plain language of the statute. NCRL is left, therefore, with nothing more than the State's promise.").

In addition, the District Court's order also ignores the inherent conflict-of-interest § 1021.11 creates with the attorney-client relationship. (ER-12, Karalash Decl. ¶s 4, 7, 11; ER-113, FAC ¶ 466)

The order also states:

> Plaintiff's contention that Defendants' commitment does not bind the <u>other parties</u> in the FAC is immaterial because Plaintiff narrowed the scope of his injunction to address only Defendants Newsom and Bonta; the speculative, independent actions of third parties not named as parties in this action are insufficient to establish the requisite "causal connection between the injury and the conduct" at issue. [emphasis added]

(ER-9, Order, lines 1-8)

There is no speculation! The statute caused the harm because it presented a risk which was not contemplated at the time Plaintiff retained Mr. Karalash to

24

represent his interest. That is the injury-in-fact that the District Court missed. The injury is independent of any other party's threat of use of § 1021.11. The statute causes a *per se* conflict of interest between counsel and his client, and impairment on the attorneys mindset to avoid personal liability for representing Plaintiff.

The chilling effect happened since Mr. Karalash did not want the possibility of a lawsuit hanging over his head, especially since § 1021.11 provides a three-year statute of limitations. Plaintiff, Mr. Karalash (and Mr. Gorski) do not want the stress of having to defendant a lawsuit brought by the government years after a case is closed. A promise is meaningless as long as municipal defendants have the option to deploy § 1021.11 in the future. Because of that precise scenario, Mr. Karalash is withdrawing his representation. (ER-164, ECF # 36; ER-112, FAC ¶ 460, ECF No. 16, also found at Docket Entry 19-3, Exhibit "1"; Reply to Opposition, 13:12-16, ECF No. 24; ER-23-24, Abrera Decl. ¶s 20-24, 41 ECF No. 20; ER-12, Karalash Decl. ¶s 4-12, 15, 22, ECF No. 24-1.)

Cal. Bar. R. Prof. Conduct, Rule 1.7(c) provides in pertinent part:

> A lawyer shall not … represent a client if there is a significant risk the lawyer's representation of the client will be materially limited … by the lawyer's own interests.

Financial self-interest is just the type of conflict the bar rules apply to. How can an attorney represent a client when his or her own financial ruin is at stake.

Another important point is that the State is notorious for litigating Second
Amendment claims as compared to all other portions of the Bill of Rights
combined. Constant appeals, motions for reconsideration, requests for stays, and
requests for En Banc review are all too common. "California's legal position has no
logical stopping point and would ultimately erode fundamental rights enumerated
in our Constitution." See *Jones v. Bonta*, 34 F.4th 704, 747 (9th Cir. 2022). The
minute § 1021.11 was signed into law, that was the act that created an inherent
conflict with every attorney representing a party in a Second Amendment case. It is
independent of any governmental entities intent to enforce § 1021.11. The harm is
caused by the mere presence of § 1021.11 <u>on the books</u>.

Plaintiff and Mr. Karalash should not have to sit around hoping they don't
get sued in the future over a span of three years. What would defendants Bonta and
Newsom do if Congress amended 42 U.S.C. § 1988 to make them <u>personally liable</u>
for attorney fees. The motion for injunctive and declaratory relief was filed to
eliminate the risk of exposure, and thus, eliminate the conflict of interest. Only a
declaration from the court in this case will suffice to alleviate any doubt as
personal liability. That is why the relief must be granted.

Considering the District Court's denial of the motion for a preliminary
injunction due to a lack of standing, Mr. Karalash filed a motion to be relieved as
counsel because of legal exposure presented by § 1021.11 as to non-state

26

defendants in this case specifically. (ER-164, ECF No. 36, MOTION to

WITHDRAW as ATTORNEY Daniel M. Karalash by Arnold Abrera. Motion

Hearing set for 1/24/2023 at 01:30 PM in Courtroom 6 (JAM) before Senior Judge

John A. Mendez.")

     Another example of how the District Court missed the facts presented by the

motion is this part of the ruling: "In this case, Plaintiff has failed to establish that

he faces a concrete and particularized injury from the enforcement of § 1012.11

against him." (ER-8, line 9.)

     The harm caused is not by its enforcement, but how it causes a conflict

between attorneys and clients and forces a change in behavior and strategy, and in

Plaintiff's case, it caused Mr. Karalash to withdraw his representation of Plaintiff,

depriving Plaintiff the counsel of his choice.

     In sum, the harm is caused by the statute, and not whether any of the

Defendants promise not to enforce it. Mr. Karalash surely does not need to accept

that risk, especially when defendants have three years to bring a civil action to

collect fees. Considering the State's proclivity in appealing every adverse ruling to

defendants position finding in favor of a Second Amendment, no reasonable

attorney wants the stress of whether the government will be seeking fees against

them personally – and having three years to bring the action. The District Court

27

was made aware of this fact but did not address it in the Order finding a lack of

standing.

> "A plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 298, 60 L. Ed. 2d 895, 99 S. Ct. 2301 (1979) (citation omitted). However, "one does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending that is enough." *Id.* (citation omitted). That <u>one should not have to risk prosecution to challenge a statute is especially true in First Amendment cases</u>, "for free expression - of transcendent value to all society, and not merely to those exercising their rights - might be the loser." *Dombrowski v. Pfister,* 380 U.S. 479, 486, 14 L. Ed. 2d 22, 85 S. Ct. 1116 (1965). [emphasis added]

*Bland v. Fessler*, 88 F.3d 729, 736-37 (9th Cir. 1996)

> **C. The Motion for Preliminary Relief Need Not Be Brought Against City And County Defendants For Relief As The Attorney General Is The Only Party That Can Defend A State Law, And A Declaration Of Unconstitutionality Would Result In The Law Of The Case.**

In its order, the District Court states:

> Plaintiff's contention that Defendants' commitment does not bind the other parties in the FAC is immaterial because <u>Plaintiff narrowed the scope of his injunction</u> to address <u>only Defendants Newsom and Bonta</u>; the speculative, independent actions of third parties not named as parties in this action are insufficient to establish the requisite "causal connection between the injury and the conduct" at issue. [emphasis added]

(ER-9, Order, lines 1-8)

However, the Municipal Defendants are not proper parties with regard to

defending a purely state law. Because an injunction against a state statute mandates

28

that the State be named as a party to defend its constitutionality, the State is the only real party in interest because the only way to prohibit any defendant named in this case from moving under § 1021.11 is to directly challenge the statute on its face, or "[i]f Defendant Attorney General committed to not enforcing § 1021.11 and entered into a consent judgment binding himself, his office, his successors and district attorneys, county counsel, and city attorneys …" See *Miller v. Bonta*, No. 22cv1446-BEN (JLB), 2022 U.S. Dist. LEXIS 217190, at 11-12 (S.D. Cal. Dec. 1, 2022).

The California Constitution sets forth the authority and obligation of the Governor and the Attorney General with regard to the enforcement of the law (Cal. Const., art. V, §§ 1, 13), and upon the California statutory provisions designating the Attorney General's role in court actions against the state (Cal. Gov. Code, §§ 12511, 12512; Cal. Code Civ. Proc., § 902.1). These constitutional and statutory provisions mean that the Attorney General is the only person who can assert the state's interest in defending a challenged law and preclude initiative proponents from asserting the state's interest in the validity of a challenged law. When the Attorney General declines to provide such a defense, the sole remedy of those who object to the Attorney General's action is with the ballot box.

> Article V, section 1, of the California Constitution provides that
> "The supreme executive power of this State is vested in the
> Governor. The Governor shall see that the law is faithfully

29

executed." Article V, section 13, defines the powers of
the Attorney General inter alia in this manner: "Subject to the
powers and duties of the Governor, the Attorney General shall
be the chief law officer of the State." The constitutional pattern
is crystal clear: if a conflict between the Governor and
the Attorney General develops over the faithful execution of
the laws of this state, the Governor retains the "supreme
executive power" to determine the public interest;
the Attorney General may act only "subject to the powers" of
the Governor.

Consistent with the Constitution, Government Code section
12010 provides: "The Governor shall supervise the official
conduct of all executive and ministerial officers."
(*Spear* v. *Reeves* (1906) 148 Cal. 501, 504 [83 P.
432].) The Attorney General is an executive officer who "shall
report to the Governor the condition of the affairs of his office"
( Gov. Code, § 12522).

*People ex rel. Deukmejian v. Brown*, 29 Cal. 3d 150, 157-58 (1981).

The people of California, through their chosen representatives,
assigned the ultimate duty to execute state laws to the
Governor, Cal. Const. art. V, § 1; … and
the duty to defend state laws and officers to
the Attorney General, Cal. Gov't Code § 12512. Because the
District Attorneys have no statutory authority concerning the
method of execution, they had no right to intervene under Rule
24(a)(2). The panel's opinion faithfully followed California law;
correctly applied Federal Rule 24(a)(2); and was consistent with
two analogous cases decided by sister circuits: *Saldano v.
Roach*, 363 F.3d 545, 551-56 (5th Cir. 2004), and *Harris v.
Pernsley*, 820 F.2d 592, 600 (3d Cir. 1987).

*Cooper v. Newsom*, 26 F.4th 1104, 1105 (9th Cir. 2022)

The Supreme Court considered an appeal in the case of *Perry v. Brown*, 671

F.3d 1052 (9th Cir. 2012) involving California's Proposition 8. California voters

passed Proposition 8 in November 2008, which amended California's constitution to prohibit same-sex marriage. Then, a California federal court determined that Proposition 8 violated the guarantees of equal protection and due process under the United States Constitution. *Perry v. Schwarzenegger*, 704 F. Supp. 2d 921, 1003 (N.D. Cal. 2010). The Ninth Circuit Court of Appeals affirmed the district court's holding in *Perry v. Brown*, 671 F.3d 1052, 1095 (9th Cir. 2012), *rev'd*, 133 S. Ct. 2652, 186 L. Ed. 2d 768 (2013). The Ninth Circuit stated:

> It is for the State of California to decide who may assert its interests in litigation, and we respect its decision by holding that Proposition 8's proponents have standing to bring this appeal on behalf of the State.

*Perry v. Brown*, 671 F.3d 1052, 1064 (9th Cir. 2012)

The case was then appealed to the Supreme Court. *Hollingsworth v. Perry*, 570 U.S. 693, 707 (2013). Instead, the Court vacated the Ninth Circuit's opinion for lack of jurisdiction, finding only the state had standing to defend its laws, even when the California Supreme Court ruled that third-parties could defend the law.

In sum, the Supreme Court agreed with the first half of the Ninth Circuits decision (i.e. "It is for the State of California to decide who may assert its interests in litigation.") and redlined: "Proposition 8's proponents have standing to bring this appeal on behalf of the State."

31

The United States Supreme court has made clear, "Article III standing 'is not to be placed in the hands of 'concerned bystanders,' who will use it simply as a 'vehicle for the vindication of value interests.'" *Hollingsworth v. Perry*, 570 U.S. 693, 707 (2013). Here, Municipal Defendants are concerned bystanders, though they may derive a benefit from the law, it is not a law they passed. Hence, the District Court's innuendo as to Municipal Defendants not being named in the motion is not consistent with the real party in interest, which is the State, and no one else.

A declaration and equitable relief in this case will result in the law of the case, which Municipal Defendants will be bound. Besides, under the Court's equitable powers, the Municipal Defendants can subject to the same declaratory and injunctive order.

In the Ninth Circuit, "the law of the case" acts as a bar when the issue in question was actually considered and decided by the first court." *United Steel Workers of Am. v. Retirement Income Plan for Hourly-Rated Employees of ASARCO, Inc.*, 512 F.3d 555, 564 (9th Cir. 2008); *United States v. Lummi Nation*, 763 F.3d 1180, 1187 (9th Cir. 2014) (quoting *Lower Elwha Band of S'Klallams v. Lummi Indian Tribe*, 235 F.3d 443, 452 (9th Cir. 2000)).

32

Here, a declaration in favor of Plaintiff would also be applied to the other Municipal Defendants in this case, thus eliminating the risk to Plaintiff and his counsel.

### D. This Action Is Not Moot And There Still Exist A Live Case And Controversy.[4]

Plaintiff incorporates the above arguments regarding standing as the line is blurred between mootness and standing. The State has not suggested that the newly enacted law will not be enforced by Municipal Defendants, and Plaintiff sees no reason to assume otherwise. Plaintiff and his counsel have stated an actual and well-founded fear that the law will be enforced against them. Further, the danger of this statute is, in large measure, one of self-censorship; a harm that can be realized even without actual prosecution.

"Fundamentally, a case becomes moot *only* when it is *impossible* for a court to grant any effectual relief *whatever* to the prevailing party. As long as the parties have a concrete interest, *however small*, in the outcome of the litigation, the case is

---

[4] In an abundance of caution, the arguments presented in this section is more or less a placeholder to preserve arguments on the issues if raised by the State and to inform the Court of the recent injunction issued in the *Miller v. Bonta* case out of the Southern District of California. Anticipating the State will raise the issue of standing, mootness, and ripeness, Plaintiff will address these issues more fully if raised by Defendants in their opposition.

not moot." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (internal quotations and citations omitted; emphasis added).

"The difference between an abstract question and a 'case and controversy' is one of degree, of course, and is not discernible by any precise test*." Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 297 (1979).

"We review mootness, a question of law, de novo." *Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166, 1173 (9th Cir. 2002). "The burden of demonstrating mootness is a heavy one." *Cantrell v. City of Long Beach*, 241 F.3d 674, 678 (9th Cir. 2001). We note that "completion of activity is not the hallmark of mootness. Rather, a case is moot only where no effective relief for the alleged violation can be given." [emphasis added] *Neighbors of Cuddy Mountain*, 303 F.3d at 1065. "'The central question . . . is constant -- whether decision of a once living dispute continues to be justified by a sufficient prospect that the decision will have an impact on the parties.' Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, 13A *Federal Practice & Procedure* § 3533 (2d ed. 1984). *Catanzano v. Wing,* 277 F.3d 99, 107 (2d Cir. 2001)." *Ferreira v. United States*, 354 F. Supp. 2d 406, 410 (S.D.N.Y. 2005).

> If a live controversy ceases to exist—*i.e.*, if a case becomes moot—then we have no jurisdiction to proceed. But in order for this to happen, a case must really be dead, and as noted, that occurs only "'when it is impossible for a court to grant any effectual relief whatever to the prevailing party.'" *Ibid*.

(quoting *Knox* v. *Service Employees*, 567 U. S. 298, 307, 132 S. Ct. 2277, 183 L. Ed. 2d 281 (2012)). "'[A]s long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot.'" *Chafin*, 568 U. S., at 172, 133 S. Ct. 1017, 185 L. Ed. 2d 1 (quoting *Knox*, 567 U. S., at 307-308, 132 S. Ct. 2277, 183 L. Ed. 2d 281)*.* Thus, to establish mootness, a "demanding standard" must be met. *Mission Product Holdings*, *Inc.* v. *Tempnology, LLC*, 587 U. S. ___, ___, 139 S. Ct. 1652, 203 L. Ed. 2d 876, 885 (2019).

We have been particularly wary of attempts by parties to manufacture mootness in order to evade review. See *Knox*, 567 U. S., at 307, 132 S. Ct. 2277, 183 L. Ed. 2d 281; accord, *Northeastern Fla. Chapter*, *Associated Gen. Contractors of America* v. *Jacksonville*, 508 U. S. 656, 661, 113 S. Ct. 2297, 124 L. Ed. 2d 586 (1993). And it is black-letter law that we have a "virtually unflagging" obligation to exercise our jurisdiction. *Colorado River Water Conservation Dist.* v. *United States*, 424 U. S. 800, 817, 96 S. Ct. 1236, 47 L. Ed. 2d 483 (1976).

*N.Y. State Rifle & Pistol Ass'n v. City of N.Y.*, 140 S. Ct. 1525, 1533 (2020)

Municipal Defendants are still free to enforce § 1021.11, despite the State's offer of non-enforcement. A declaration in this specific case would naturally bind Municipal Defendants as it will become the law of the case. "The law makes clear that—although the Declaratory Judgment Act provides <u>a remedy different from an injunction</u>—it does not provide an additional cause of action with respect to the underlying claim." [emphasis added] *City of Reno v. Netflix, Inc.*, 52 F.4th 874, 876 (9th Cir. 2022).

The State is asking Plaintiff and his counsel to play financial Russian Roulette---hoping no lawsuit is filed over the next three years for attorney fees.

35

First, the State incrementally changes its so-called non-enforcement policy, just like the State of New York did with the Supreme Court. See *N.Y. State Rifle & Pistol Ass'n v. City of N.Y.,* 140 S. Ct. 1525 (2020).

Here is what several of the justices had to say about New York's gamesmanship regarding mootness:

> By incorrectly dismissing this case as moot, the Court permits our docket to be manipulated in a way that should not be countenanced. …
>
> On January 22, 2019, we granted review to consider the constitutionality of a New York City ordinance that burdened the right recognized in *Heller*. …
>
> In the District Court and the Court of Appeals, the City vigorously and successfully defended the constitutionality of its ordinance, and the law was upheld based on what we are told is the framework for reviewing Second Amendment claims that has been uniformly adopted by the Courts of Appeals. One might have thought that the City, having convinced the lower courts that its law was consistent with *Heller*, would have been willing to defend its victory in this Court. But once we granted certiorari, both the City and the State of New York sprang into action to prevent us from deciding this case. Although the City had previously insisted that its ordinance served important public safety purposes, our grant of review apparently led to an epiphany of sorts, and the City quickly changed its ordinance. And for good measure the State enacted a law making the old New York City ordinance illegal.
>
> Thereafter, the City and *amici* supporting its position strove to have this case thrown out without briefing or argument. The City moved for dismissal "as soon as is reasonably practicable" on the ground that it had "no legal reason to file a brief." Suggestion of Mootness When we refused to jettison the case at that early stage, the City submitted a brief but "stress[ed] that

36

[its] true position [was] that it ha[d] no view at all regarding the constitutional questions presented" and that it was "offer[ing] a defense of the . . . former rul[e] in the spirit of something a Court-appointed *amicus curiae* might do." Brief for Respondents 2.

A prominent brief supporting the City went further. <u>Five United States Senators</u>, four of whom are members of the bar of this Court, filed a brief insisting that the case be dismissed. If the Court did not do so, <u>they intimated, the public would realize that the Court is "motivated mainly by politics, rather than by adherence to the law," and the Court would face the possibility of legislative reprisal</u>. Brief for Sen. Sheldon Whitehouse et al. as *Amici Curiae* 2-3, 18 (internal quotation marks omitted).

…

It is certainly true that the new City ordinance and the new State law give petitioners *most of* what they sought, but that is not the test for mootness. Instead, "a case 'becomes moot only when it is *impossible* for a court to grant *any effectual relief whatever* to the prevailing party.'" *Chafin* v. *Chafin*, 568 U. S. 165, 172, 133 S. Ct. 1017, 185 L. Ed. 2d 1 (2013) (emphasis added). "'As long as the parties have a concrete interest, *however small*, in the outcome of the litigation, the case is not moot.'" *Ibid.* (emphasis added). [emphasis added]

*N.Y. State Rifle & Pistol Ass'n v. City of N.Y.,* 140 S. Ct. 1525, 1527-28 (2020).

The mere potential of a monetary penalty has a chilling impact on Plaintiff's ability to exercise his First Amendment rights, causing a form of self-cencorship. See *Nelson v. Nat'l Aeronautics & Space Admin.*, 530 F.3d 865, 882 (9th Cir. 2008) ("Unlike monetary injuries, constitutional violations cannot be adequately remedied through damages and therefore generally constitute irreparable harm."), rev'd on other grounds sub nom. *Nat'l Aeronautics & Space Admin. v. Nelson*, 562

U.S. 134 (2011); *Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.").

In addition, "the mere cessation of the conduct sought to be enjoined does not moot a suit to enjoin the conduct, lest dismissal of the suit leave the defendant free to resume the conduct the next day." *Chicago United Indus., Ltd. v. City of Chicago*, 445 F.3d 940, 947 (7th Cir. 2006), citing *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 189 (2000).

"Defendants' actions are capable of repetition, yet evade review, because, on information and belief, they have a practice of returning seized firearms when the owner files suit and resists making plea deals, using delay tactics to increase the costs of litigation through excessive requests for judicial review, or use legislative and administrative tricks to avoid judicial review in an attempt to moot a case." (ER-117, FAC ¶ 493.)

Further, "The bill would make these provisions inoperative upon invalidation of a specified law in Texas, and would repeal its provisions on January 1 of the following year." SB 1327, page 1. So, every time a state of the Union passes a law which defendants Newsom and Bonta do not agree with, they will use these legislative tactics to punish California citizens. Therefore, Defendants' actions are capable of repetition, yet evade review, and why they must be enjoined.

If not enjoined, this abuse of the legislative process will only embolden Defendants to continue with this course of conduct. Or, as defendant Newsom says, "put them on the defense."

The vindication of Plaintiff's constitutional rights is being fought at every level of the government, including the State's judiciary --- as is clear, vindication of the Second Amendment in California depends upon the will of the majority as expressed through the state legislature. However, Plaintiff's constitutional rights are not subject to legislative or executive discretion. By employing the legislative injunction to guarantee constitutional rights, the Court is not usurping legislative authority. Rather, the Court is creating a constitutional baseline so that the legislators' exercise of discretion, be it through action or inaction, will not exceed their prerogative by violating constitutional guarantees. It is basic to the American constitutional system that legislative power is limited. The legislative injunction ensures that these limits are set not by the status quo, but by the Constitution. See Robert A. Schapiro, "The Legislative Injunction: A Remedy for Unconstitutional Legislative Inaction" *The Yale Law Journal* 99, no. 1, p. 231 (1989).

Defendants have never made any effort to protect the rights afforded under the Second Amendment. Defendants have never been proactive in protecting the Second Amendment. In fact, Defendants have been proactive in protecting abortion rights at the expense of Second Amendment rights.

39

Moreover, a declaration from the court in the form of an order and judgment alleviates all doubt as to the future prospect of the law being enforced; as compared to a possibility that some form of estoppel will apply in a different action with a different judge in state court.

Plaintiff has no enforcement mechanism when similar laws are passed, just as the state of New York employed, and is still employing with legislative trickery.

§ 1021.11 still on the books. Holding that a state law is preempted by federal law does not, however, render the entire state law nonexistent. The state law continues to exist until the legislature that enacted it repeals it. At the same time, any portion of the law that is preempted is unenforceable in court until Congress removes the preemptive federal law or the courts reverse course on the effect of the federal law. See Jonathan F. Mitchell, *The Writ-of-Erasure Fallacy*, 104 VA. L. REV. 933, 953 (2018) ("[S]tate statutes that contradict 'supreme' federal law continue to exist as 'laws,' even as they go unenforced, and they would become enforceable if federal law were amended or reinterpreted to remove the conflict."). Preemption is therefore claim-driven: when a party successfully invokes preemption as a defense to a state-law claim, the court will apply the federal law and the state law will be disregarded to the extent the laws conflict. *Close v. Sotheby's, Inc.*, 909 F.3d 1204, 1209-10 (9th Cir. 2018).

The Fourth Circuit reached a similar conclusion in a similar case. In *Mobil Oil Corp. v. Attorney Gen. of Va.*, 940 F.2d 73, 75 (4th Cir. 1991), Mobil Oil sued the Attorney General of Virginia to challenge the constitutionality of a new statute, and the Attorney General argued that private enforcement provisions in the statute prevented standing. The court rejected this argument, reasoning that the possibility of a dispute between the company and private parties "does not bear on whether [the company] has a dispute with the Attorney General," and <u>noting the likelihood that the Attorney General would intervene in any private litigation to defend the constitutionality of the statute</u>. *Id.* at 76-77. [emphasis added] See *Bland v. Fessler*, 88 F.3d 729, 736-38 (9th Cir. 1996).

Municipal Defendants have the power to enforce the civil statute, Cal. Civ. Code § 1021.11, and that California's courts have held that they are not bound by lower federal court interpretations of the United States Constitution, *People v. Bradley,* 1 Cal. 3d 80, 460 P.2d 129, 132, 81 Cal. Rptr. 457 (Cal. 1969) (en banc) ("we are not bound by the decisions of the lower federal courts even on federal questions"); *People v. Perez,* 279 Cal. Rptr. 915, 919 (Cal. Ct. App. 1991) (citing *Bradley* to reject federal appeals court decisions regarding the Sixth Amendment).

Though this circuit voiced "serious doubts" about the argument that state courts may ignore the decisions of federal circuit courts on federal questions

41

in *Yniguez v. State of Arizona,* 939 F.2d 727, 736 (9th Cir. 1991), *aff'd in part,*

*rev'd in part sub nom. Yniguez v. Arizonans for Official English,* 42 F.3d 1217 (9th

Cir. 1995), *aff'd upon reh'g,* 69 F.3d 920 (9th Cir. 1995) (en banc), *cert.*

*granted,* __ U.S. __, 116 S. Ct. 1316, 134 L. Ed. 2d 469 (1996), the law is not well

settled and a declaration from this Court is relief that can be granted.

An order by this court striking down the civil statute with a declaration

would certainly help redress Plaintiff's injury. Of Plaintiff's potential legal

adversaries, the Attorney General of California has far and away the greatest

resources, both economic and political. However, with the fee-shifting provision

still intact for use by private parties, Plaintiff is still suffering injury-in-fact. A

finding that the statute is unconstitutional, it would be of immense benefit to

Plaintiff in his particular case. *See Yniguez,* 939 F.2d at 737 ("While [an order

striking down a statute] may have left [private parties'] right to sue intact, a right to

bring a private enforcement action is not a complete substitute for executive

enforcement and implementation. Hence, as a practical matter, the [order]

substantially weakened [the statute] . . . ."). See also *Bland v. Fessler*, 88 F.3d 729,

736-38 (9th Cir. 1996).

The United States Supreme Court does not "strike down" unconstitutional

provisions of law; instead, such rulings merely render the provisions unenforceable

in whole or in part. As the United States Fifth Circuit Court of Appeals has

explained: "It is often said that courts 'strike down' laws when ruling them unconstitutional. That's not quite right. Courts hold laws unenforceable; they do not erase them. Many laws that are plainly unconstitutional remain on the statute books. Jim Crow-era segregation laws are one example*." Pool v. City of Houston*, 978 F.3d 307, 309 (5th Cir. 2020) (emphasis added; citations omitted).

Because the law is still on the books in California, attorneys are forced to self-censor until repealed. That is why the injunction grated in *Miller v. Bonta* has no effect on the parties in this case. Only Mr. Karalash and his client can decide potential exposure created by the law.

As long as the law remains on the books, attorneys will definitely consider whether to accept a case with the law still capable of enforcement in a state court proceeding.

Here, the law remains on the books, and the Municipal Defendants are free to use the law in this case, and because of that, a conflict remains due to self-censorship and ethical guidelines for attorneys.

### E. Plaintiff Is Still Entitled To Relief, Even Though There Is A Parallel Proceeding Involving The Same Law With Similar Relief Granted.[5]

_____

[5] In an abundance of caution, the arguments presented in this section is more or less a placeholder to preserve arguments on the issues if raised by the State and to inform the Court of the recent injunction issued in the *Miller v. Bonta* case out of the Southern District of California. Anticipating the State will raise the issue of standing, mootness, and ripeness, Plaintiff will address these issues more fully if raised by Defendants in their opposition.

43

Plaintiff commenced this action on July 5, 2022. On July 22, 2022, §

1021.11 was signed into law. On September 2, 2022, Plaintiff filed an First

Amended Complaint and Supplemental Complaint, which added two claims for

declaratory and equitable relief regarding the constitutionality of § 1021.11.

On September 26, 2022, a parallel action was filed by different plaintiffs,

captioned: *Miller v. Bonta* (3:22-cv-01446) District Court, S.D. California.

On December 1, 2022, the District Court in the Southern District of

California had an opposite opinion that the *Miller* plaintiffs in that case had

standing even though the Attorney General made the same offer of non-

enforcement. In fact, Bonta presented that offer to the District Court in this case as

part of a Request for Judicial Notice found at ECF No. 26 found at ER-163.

On December 9, 2022, the District Court in the Eastern District of California

in this case denied Plaintiff's Motion for a Preliminary Injunction and Declaratory

Relief on the basis of a lack of standing. On the same day, Plaintiff filed the Notice

of Appeal in this case. At this point in time, the Ninth Circuit's jurisdiction over

the case commenced. In 1821 the Supreme Court stated

> [w]ith whatever doubts, with whatever difficulties, a case may
> be attended, we must decide it, if it be brought before us. We
> have no more right to decline the exercise of jurisdiction which
> is given, than to usurp that which is not given. The one or the
> other would be treason to the constitution. Questions may occur
> which we would gladly avoid; but we cannot avoid them. All

44

we can do is, to exercise our best judgment, and conscientiously to perform our duty. In doing this, on the present occasion, we find this tribunal invested with appellate jurisdiction in all cases arising under the constitution and laws of the United States.

*Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 404 (1821).

On December 16, 2022, because the District Court denied Plaintiff's motion for equitable relief, attorney Dan Karalash then had not choice but to file a Motion to Withdraw as attorney for Plaintiff. (ER-164, ECF No. 36)

On December 19, 2022, the district court judge in *Miller v. Bonta* (3:22-cv-01446) enjoined the enforcement of § 1021.11.

The terms "parallel proceedings," "duplicative litigation," and "the exercise of concurrent jurisdiction," refer to the simultaneous prosecution of two or more suits in which at least some of the issues and parties are so closely related that the judgment of one will necessarily have a res judicata effect on the other.

Plaintiff has researched this issue and can find no case on point. This is the closest Plaintiff could find on the subject:

> Moreover, overlapping injunctions appear to be a common outcome of parallel litigation, rather than a reason for the Court to pass on exercising its duty to determine whether litigants are entitled to relief. For example, in recent litigation challenging the Secretary of Commerce's decision to add a citizenship question to the census, three district courts issued parallel injunctions against the policy. *See New York v. United States Dep't of Commerce*, 351 F. Supp. 3d 502, 677 (S.D.N.Y. 2019)4; *State v. Ross*, 358 F. Supp. 3d 965, 1050-51 (N.D. Cal. 2019); *Kravitz v. United States Dep't of Commerce*,

366 F. Supp. 3d 681, 755 (D. Md. 2019). The Court concludes that the existence of another injunction—particularly one in a different circuit that could be overturned or limited at any time—does not negate Oregon's claimed irreparable harm.

*California v. HHS*, 390 F. Supp. 3d 1061, 1065-66 (N.D. Cal. 2019).

There is no remedy at law because the State is immune – plaintiff's only recourse in the future is contempt in his case. He will be deprived of a remedy if there is no declaration and/or finding of harm in this case.

Of particular note, Newsome and Bonta are the only common parties in the two parallel proceedings. The county and city defendants in this case are not part of the proceedings in the Southern District of California.

Concurrent jurisdiction does not necessarily entail conflicting jurisdiction. The mere existence of dual grounds of prescriptive jurisdiction does not oust either one of the regulating forums. Thus, each forum is ordinarily free to proceed to a judgment. Many civil rights lawsuits are repetitive and overlapping, but not duplicative. When the lawsuits have a sufficient degree of overlap, or are identical, concerns may arise as to the efficient use of the parties' and taxpayers' resources.

"As an initial matter, to our knowledge, no court has adopted the view that an injunction imposed by one district court against a defendant deprives every other federal court of subject matter jurisdiction over a dispute in which a plaintiff

seeks similar equitable relief against the same defendant." *California v. U.S. HHS*,

941 F.3d 410, 421 (9th Cir. 2019).

> Generally, as between state and federal courts, the rule is that "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction…." *McClellan* v. *Carland, supra,* at 282. See *Donovan* v. *City of Dallas,* 377 U.S. 408 (1964). <u>As between federal district courts</u>, however, though <u>no precise rule</u> has evolved, the general principle is to avoid duplicative litigation. See *Kerotest Mfg. Co.* v. *C-O-Two Fire Equipment Co., supra; Steelman* v. *All Continent Corp.,* 301 U.S. 278 (1937); *Landis* v. *North American Co.,* 299 U.S. 248, 254 (1936).

*Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).

"No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required. See *Landis* v. *North American Co., supra,* at 254-255. <u>Only the clearest of justifications will warrant dismissal</u>." [emphasis added] *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 818-19 (1976).

Under the voluntary cessation exception, a defendant's decision to stop a challenged practice generally "does not deprive a federal court of its power to determine the legality of the practice." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (quoting *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982)); *see also Knox v. Serv. Emps.*

47

*Int'l Union, Local 1000*, 567 U.S. 298 (2012) (remarking that post-appeal "maneuvers designed to insulate a decision from review by [an appellate court] must be viewed with a critical eye"); *Akina v. Hawaii*, 835 F.3d 1003, 1010 (9th Cir. 2016).

"The Supreme Court or any other court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances." 28 U.S.C. § 2106.

The purpose of Declaratory Judgment Act (28 U.S.C.S § 2201) is to settle actual controversies before they ripen into violations of law or breach of duty. *United States v. Fisher-Otis Co*., 496 F.2d 1146, 1974 (10th Cir. 1974). Congress intended declaratory judgment procedure to act as alternative to injunctive relief and to be utilized to test constitutionality of state statutes. *Cleaver v. Wilcox*, 499 F.2d 940 (9th Cir. 1974).

Federal Declaratory Judgment Act (28 U.S.C. §§ 2201 et seq.) was enacted to dispel difficulties involved with respect to injunctive relief against unconstitutional state statutes, Congress intending declaratory relief to act as alternative to stronger remedy of injunction and to be utilized to test

48

constitutionality of state criminal statutes in cases where injunctive relief would be unavailable. *Steffel v. Thompson*, 415 U.S. 452 (1974).

## **CONCLUSION**

Plaintiff has standing, and declaratory and injunctive relief should have been granted. The District Court's order should be reversed, and the request for injunctive and declaratory relief be granted, and the matter remanded to the District Court to proceed in accordance with this Court's opinion and order.

Dated this <u>Friday, January 6, 2023</u>

Respectfully submitted,

/s/ *Gary W. Gorski*
Gary W. Gorski
Attorney for Appellant/Plaintiff

49

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## STATEMENT OF RELATED CASES PURSUANT TO CIRCUIT RULE 28-2.6

**9th Cir. Case Number No. 22−16897**

The undersigned attorney states the following: I am aware of one or more related cases currently pending in the District Court of Southern District of California, and possibly this court if appealed. The case number and name of each related case and its relationship to this case are:

*Miller v. Bonta*, No. 22cv1446-BEN (JLB), 2022 U.S. Dist. LEXIS 217190 (S.D. Cal. Dec. 1, 2022). Court Order on Standing.

*Miller v. Bonta*, No. 22cv1446-BEN (JLB), 2022 U.S. Dist. LEXIS 228197 (S.D. Cal. Dec. 19, 2022). Order Granting Preliminary Injunction.

**Signature** /s/ *Gary W. Gorski* **Date** Friday, January 6, 2023

.

50

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

## CERTIFICATE OF COMPLIANCE FOR BRIEFS

I am the attorney or self-represented party.

**This brief contains 11,894 words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief complies with the word limit of Cir. R. 32-1.

**Signature** /s/ Gary W. Gorski     **Date** Friday, January 6, 2023

| Properties ˅ | |
|---|---|
| Size | 111KB |
| Pages | 52 |
| Words | 11894 |
| Total Editing Time | 0 Minutes |
| Title | AOB_Abrera |

## CERTIFICATE OF SERVICE

### Certificate of Service for Electronic Filing

**9th Cir. Case Number: 22−16897**

I hereby certify that I electronically filed the attached document on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Signature** /s/ *Gary W. Gorski*  **Date:** Friday, January 6, 2023